## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

CHRISTINE LORRAINE HARRIS,   )  Case No.: 1:13-cv-01584 BAM
                  )
       Plaintiff,       )  **ORDER ON PLAINTIFF'S**
                  )  **SOCIAL SECURITY COMPLAINT**
   v.            )
                  )
CAROLYN W. COLVIN, Acting   )
Commissioner of Social Security,  )
                  )
       Defendant.     )
_____)

## INTRODUCTION

Plaintiff Christine Harris ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability benefits and supplemental security income ("SSI") pursuant to Titles II and XVI of the Social Security Act.[1] The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe. The Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court affirms the agency's determination to deny benefits.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this suit.

**FACTS AND PRIOR PROCEEDINGS**

On July 12 and 24, 2012, Plaintiff filed applications for supplemental security income and disability insurance benefits. AR 149-168.[2]   Plaintiff's applications were denied initially and on reconsideration. AR 60-102.   Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 104. ALJ Brenton L. Rogozen held a video hearing on January 31, 2013 and issued an order denying benefits on April 12, 2013. AR 12-20.   Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 1-7. This appeal followed.

**Hearing Testimony**

The ALJ held a video hearing on January 31, 2013.  AR 12.  Plaintiff appeared and testified in Fresno and the ALJ presided over the hearing from San Jose, California. AR 24.   Plaintiff was represented by attorney Melissa Proudian. AR 24.   Impartial Vocational Expert ("VE") Thomas C. Dachelet also testified.  AR 24.

Plaintiff was born on July 3, 1965 and was 47 years old at the time of the hearing. AR 30. Plaintiff testified that she does not drive, she has no children, and she lives with her sister.  AR 29-30. Plaintiff stated that the last time she worked was in January 2009 when she worked as a warehouseman loading and unloading trucks. AR 31-32. According to Plaintiff, she stopped working at the warehouse because the company shut down and relocated overseas. AR 32. Plaintiff further stated that even if the company had not relocated she would have been unable to continue working there due to her physical impairments. AR 33.   Prior to working at the warehouse, Plaintiff also worked as a teacher's aide and as a post office employee.  AR 36. After leaving the warehouse job, Plaintiff relied on unemployment benefits for two years as her income. AR 49-50

When asked about her physical impairments, Plaintiff explained that she suffers from back and leg pain primarily in her right leg. AR 36.  The ALJ clarified that although Plaintiff's alleged onset date is January of 2009, Plaintiff's medical records begin in 2011. AR 36.  Plaintiff testified that she underwent physical therapy and surgery in either 2007 or 2008 for a herniated disk in her back but Plaintiff claimed that treatment did not help with her pain. AR 37-38. Plaintiff also suffered with foot

---

[2]     References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

drop for over the last five years. AR 39.  To help her walk, Plaintiff wears a brace on her right foot and she also uses a cane everywhere she goes. AR 41-42. When asked about how the foot drop affected her employment at the warehouse Plaintiff stated that she was often sent home by a supervisor within 10 minutes of arriving to work. AR 39-40.

Plaintiff estimated that the most she could lift is a gallon of milk, she also cannot reach over head, and she cannot kneel, squat, or walk on uneven surfaces. AR 43-44. When asked about her other limitations, Plaintiff stated that her medications make her very tired. AR 45. Plaintiff starts taking her medication at 7:00 a.m. each morning including Gabapentin, Norco, and iron pills which Plaintiff testified make her sleep for the majority of the day. AR 45. Plaintiff stated that her sister prepares her meals, helps her dress, and helps her bathe due to her pain.  AR 46-47.

Thereafter, the ALJ elicited testimony of the vocational expert ("VE") Thomas C. Dachelet. AR 54.  The VE testified that Plaintiff's past work is best classified as laborer of stores and teacher's aide. AR 55.

The ALJ asked the VE several hypothetical questions, contemplating an individual of the same age, education, and work background as Plaintiff.  AR 56.  This individual can sit for six hours in an eight-hour workday; is limited to carrying 10 pounds; can never climb, stoop, kneel, crouch, balance, or crawl, and any standing or walking would need to be done with an assistive device.  AR 56. The vocational expert testified that the individual could perform sedentary work. AR 56. The VE testified that this individual could perform most sedentary work. The VE further stated that with most sedentary work there is no climbing or stooping, kneeling, crouching or crawling. AR 56. The ALJ also confirmed with the VE that any walking could effectively be done with the cane, even if the individual needed to carry something in the other hand. AR 56.

Finally, Plaintiff's attorney questioned the vocational expert regarding an individual that had the same vocational factors as Plaintiff but that individual's sitting tolerance is 10-15 minutes at maximum, standing tolerance with a cane  is 10-15 minutes at maximum, walking tolerance with a cane is also 10-15 minutes at maximum, and the individual is only capable of lifting anything under 10 pounds. AR 57. The vocational expert opined that an individual with these limitations would be unemployable. AR 57. Plaintiff's attorney also asked the VE to consider the ALJ's hypothetical but

adding that the individual would need one to two hours of extra breaks in addition to those normally given. AR 58. The VE testified that no work exists for that hypothetical individual in the national economy. AR 58.

### Relevant Medical Evidence

The entire medical record was reviewed by the Court. AR 248-349. The relevant medical evidence will be referenced below as necessary.

## THE ALJ'S DECISION

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 12-20. More particularly, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 4, 2009. AR 14. Second, the ALJ identified Plaintiff's right leg foot drop and right leg with atrophy as severe impairments. AR 14. Nonetheless, the ALJ determined that the severity of Plaintiff's impairments did not meet or exceed any of the listed impairments. AR 14.

Based on his review of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work with the following limitations: Plaintiff can lift and/or carry less than 10 pounds occasionally and frequently; she can stand and/or walk with the use of an assisted device, she can sit for six hours in an eight hour work day with normal breaks and she cannot climb, stoop, kneel, balance, crouch, or crawl. AR 15. The ALJ found that Plaintiff could perform a significant number of jobs that exist in the national economy. AR 19. Therefore the ALJ found that Plaintiff was not disabled under the Social Security Act. AR 19-20

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The record as a

whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commission's conclusion.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commission must apply the proper legal standards.  *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commission's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987); *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 2002).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c (a)(3)(A).  A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).  The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

Here, Plaintiff challenges the ALJ's disability finding in two respects.  First, Plaintiff argues that the ALJ's finding at Step Five is flawed.  Second, Plaintiff argues that the ALJ erred in rejecting her subjective symptom testimony.

## DISCUSSION[3]

### 1.    The ALJ Posed a Proper Hypothetical Question to the Vocational Expert

Plaintiff contends that the hypothetical question posed to the vocational expert is inconsistent with her RFC as found by the ALJ, and therefore the ALJ's finding that Plaintiff could perform alternative jobs in the national economy is not supported by substantial evidence. Specifically,

---

[3]     The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits.  Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

Plaintiff contends that there is a discrepancy between the ALJ's RFC finding that Plaintiff can lift *less* than 10 pounds and the hypothetical posed to the VE which stated that Plaintiff can carry 10 pounds. (Doc.13 at 4-6.) The Commissioner asserts that the hypothetical posed to the VE was accurate even though the wording on the 10 pound limitation differed between the ALJ's RFC finding and the question posed the VE.  Alternatively, the Commissioner suggests that if the ALJ erred, that error was harmless.  (Doc. 14 at 4-5.)

An ALJ posing a hypothetical question to a vocational expert "must set out all the limitations and restrictions of the particular claimant." *Magallanes v. Bowen,* 881 F.2d 747, 756 (9th Cir. 1989) (quoting *Embrey v. Bowen,* 849 F.2d 418, 422 (9th Cir. 1988)). The hypothetical "need not frame the claimant's impairments in the specific diagnostic terms used in medical reports, but instead should capture the concrete consequences of those impairments." *Lacroix v. Barnhart,* 465 F.3d 881, 889 (8th Cir. 2006).

The ALJ's hypothetical question to the VE posited an individual who was "limited to carrying ten pounds and can sit for at least six hours in an eight-hour work day; no climbing, stooping, kneeling, balancing, crouching, or crawling." AR 56.  In his written decision, the ALJ found that Plaintiff could "perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except that that claimant can lift and/or carry less than 10 pounds occasionally and frequently; the claimant can stand and/or walk with the use of an assistive device; the claimant can sit 6 hours in an 8-hour workday with normal breaks; and the claimant cannot climb, stoop, kneel, balance, crouch, or crawl." AR 15. The ALJ's RFC finding is ambiguous in that it is unclear whether Plaintiff can carry 10 pounds, as his hypothetical question arguably indicates, or whether Plaintiff can only carry "9.9 pounds" or less than 10 pounds, as the ALJ's RFC finding indicates.  If the ALJ intended to prohibit Plaintiff from carrying 10 pounds or more, then his hypothetical question to the vocational expert did not accurately reflect Plaintiff's limitations, and the ALJ erred in relying on the VE's testimony.

This apparent ambiguity may be resolved by reviewing the ALJ's decision as well as the record as a whole. *See Magallanes,* 881 F.2d at 755 (stating that a reviewing court may draw "specific and legitimate inferences from the ALJ's opinion" if "these inferences are there to be drawn").  For example, in determining Plaintiff's RFC, the ALJ reviewed the opinions of consultative examiner Dr.

Georgis, and state agency review physicians, Roger Fast, M.D. and George Lockie, M.D. Dr. Georgis opined Plaintiff could lift and/or carry less than ten pounds occasionally and frequently, she could stand and/or walk with an assistive device; she could sit six hours in an eight-hour workday with normal breaks, and she could not climb, stoop, kneel, balance, crouch, or crawl.  The ALJ gave the findings of Dr. Georgis great weight because they were not inconsistent with the ALJ's own findings. AR 18.

Conversely, the ALJ gave little weight to the findings of State agency review physicians, Drs. Fast and Lockie, who concluded Plaintiff's impairments did not preclude her from performing light work activity.  The ALJ noted that Drs. Fast and Lockie found Plaintiff was injured at work, in 2006, but she continued to do medium work until her company closed in January 2009; and she had not received medical treatment since 2007. The ALJ opined that while the findings of Drs. Fast and Lockie were not entirely inconsistent with the objective record, the ALJ gave "the claimant's subjective complaints and overall objective record reasonable consideration" and disagreed with Drs. Fast and Lockie's findings that Plaintiff could do light work and instead opined that  Plaintiff "is limited to sedentary exertional capacity." AR 18.  The ALJ further explained that sedentary work was most appropriate because "Dr. Georgis determined that Plaintiff was not precluded from sedentary exertional capacity despite conditions of chronic low back pain." AR 18.  Based on these findings, the ALJ concluded that "the significant range of sedentary residual functional capacity assessment is supported by the testimony of the claimant; the claimant's disability and function reports; the claimant's pain questionnaire; and the claimant's treatment records.  The ALJ concluded that "specifically, the sedentary limitation addresses the claimant's impairments and subjective complaints." AR 18.

In examining the testimony from the VE, the record further indicates that the VE explicitly explained that Plaintiff was able to perform the full range of sedentary work because "even though there may be some walking involved…when you walk, you're not carrying very much."  AR 56.

Here, the most reasonable inference from the ALJ's written decision is that Plaintiff is limited to sedentary work and her exertional limitation is no more than 10 pounds, a synonym for "less than 10 pounds".  AR 18.   The ALJ's failure to use the exact phrase "less than" 10 pounds when

1    questioning the VE does not undermine the validity of the ALJ and the VE's obvious conclusion that

2    based on her limitations, Plaintiff could complete sedentary work.

3        The Central District of California faced a similar question in *Dominguez v. Colvin*, 927

4    F.Supp.2d 846, 861 (C.D. Cal. 2013).  In *Dominguez*, Plaintiff argued that the ALJ failed to consider a

5    Functional Capacity Questionnaire, stating that Plaintiff could "rarely" lift and carry less than 10

6    pounds and "never more than that."   *Dominguez*, 927 F.Supp at 862. In concluding that the ALJ

7    properly considered the functional capacity questionnaire, the Court held that the ALJ's finding that

8    Plaintiff could lift and carry less than 10 pounds rarely and never lift 10 pounds or more was

9    consistent with the ALJ's conclusion that Plaintiff could perform sedentary work which requires only

10   "occasional[ ]" lifting and carrying of very lightweight items like files, ledgers, and small tools and

11   never requires lifting more than 10 pounds."  Like in *Dominguez*, while it may have made a better

12   record for the ALJ to have explicitly asked the VE about Plaintiff's ability to lift less than 10 pounds,

13   the intended interpretation that Plaintiff could complete sedentary exertional limitations is clear from

14   the ALJ's written opinion and from the VE's explanation of his vocational findings.  Therefore, the

15   ALJ's hypothetical questions to the vocational expert accurately incorporated the lift/carry limitations

16   set forth in the RFC determination, and the ALJ's finding that Plaintiff can perform sedentary jobs that

17   exist in the national economy is supported by substantial evidence.

18   **Harmless error**

19       Even assuming that a conflict exists between the ALJ's RFC finding and his hypothetical

20   question to the vocational expert, any error in relying on the vocational expert's testimony regarding

21   Plaintiff's ability to perform sedentary work was harmless. *See McLeod v. Astrue*, 640 F.3d 881, 886-

22   888 (9th Cir. 2011) (holding that the same kind of harmless error rule that courts ordinarily apply in

23   civil cases applies in social security disability cases, and that the burden is on the party attacking the

24   agency's determination to show that prejudice resulted from the error) (*citing Shinseki v. Sanders*, 556

25   U.S. 396, 406-409,413-414 (2009)).

26       The ALJ's failure to include properly supported limitations in a hypothetical question on which

27   the vocational expert's testimony is based is not harmless error if a "proper hypothetical would have

28   included limitations which, the record suggests, would have been determinative as to the vocational

expert's recommendation to the ALJ." *Robbins*, 466 F.3d at 886.  Here, the vocational expert testified that while a hypothetical person described by the ALJ could not perform Plaintiff's past relevant work, alternative jobs exist that an individual with Plaintiff's limitations, transferable skills, age, and education would be able to perform. AR 56. Based in part on this testimony, the ALJ found that Plaintiff could perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a).  According to the job classification information, sedentary work is defined as "involv[ing] lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 CFR 404.1567(a).

Ultimately, while Plaintiff points out an apparent ambiguity between the ALJ's assessment that she can lift less than 10 pounds and the ALJ's question to the VE that Plaintiff can lift 10 pounds, the Court finds that this a distinction without a difference. The ALJ's lifting limitation of less than 10 pounds is essentially the same restriction posed to the VE.  The regulations define sedentary work as lifting "no more than 10 pounds."  20 CFR 404.1567(a).  Arguably, the meaning of "no more than 10 pounds" is a broad statement that encompassed limitations on lifting "less than 10 pounds," "10 pounds or less," or "lifting 10 pounds." Regardless, the difference if any between these statements is so nominal, that it lacks any material difference.  When the ALJ's hypothetical is different, but not materially different from the restrictions described by the ALJ, there is no error. *See Miller v. Shalala*, 8 F.3d 611, 614 (8th Cir. 1993). Here, the two statements being compared are not materially different. While  the wording to the VE is not an identical match of the ALJ's RFC, the hypothetical question still results in a finding that Plaintiff is limited to sedentary work, which is a limitation that Plaintiff lift no more than 10 pounds.  "The point of the hypothetical question is to clearly present to the VE a set of limitations that mirror those of the claimant." *See Hogg v. Shalala,* 45 F.3d 276, 279 (8th Cir.1995); *see also Roe v. Chater*, 92 F.3d 672, 676 (8th Cir. 1996) (stating that the hypothetical question need not use specific diagnostic or symptomatic terms where other descriptive terms can adequately define the claimant). Given the plain similarities between the two statements, the Court finds they are not materially different as they produce the same result—limiting Plaintiff to sedentary

1    work.  Accordingly, this error, if any, does not constitute reversal.  *See Curry v. Sullivan,* 925 F.2d
2    1127, 1131 (9th Cir.1991).

3    **2.      The ALJ Properly Found Plaintiff Not Credible**

4          Second, Plaintiff argues that the ALJ failed to provide clear and convincing evidence for
5    finding her subjective testimony less than credible

6          A two-step analysis applies at the administrative level when considering a claimant's
7    credibility. *Treichler v. Comm. Of Soc. Sec.*, --- F.3d --- 2014 WL 7332774 *9 (9th Cir. Dec. 24,
8    2014); *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).  First, the claimant must produce
9    objective medical evidence of an impairment that could reasonably be expected to produce some
10   degree of the symptom or pain alleged.  *Smolen*, 80 F.3d at 1281-82.  If the claimant satisfies the first
11   step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding
12   the severity of his symptoms only if he makes specific findings and provides clear and convincing
13   reasons for doing so.  *Id.* at 1281.  The ALJ must "state which testimony is not credible and what
14   evidence suggests the complaints are not credible." *Mersman v. Halter*, 161 F.Supp.2d 1078, 1086
15   (N.D. Cal. 2001) ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not
16   credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported
17   by substantial evidence."); SSR 96-7p (ALJ's decision "must be sufficiently specific to make clear to
18   the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's
19   statements and reasons for that weight.").

20         Other factors an ALJ may consider include: (1) the applicant's reputation for truthfulness, prior
21   inconsistent statements or other inconsistent testimony; (2) unexplained or inadequately explained
22   failure to seek treatment or to follow a prescribed course of treatment; and (3) the applicant's daily
23   activities. *Smolen*, 80 F.3d at 1284. Work records, physician and third party testimony about nature,
24   severity, and effect of symptoms, and inconsistencies between testimony and conduct also may be
25   relevant. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ may rely, in part, on
26   his or her own observations which cannot substitute for medical diagnosis. *Marcia v. Sullivan*, 900
27   F.2d 172, 177 n.6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is

28

malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Morgan v. Comm'r of Soc. Sec. Admin*., 169 F.3d 595, 599 (9th Cir. 1999).

The first step in assessing Plaintiff's subjective complaints is to determine whether Plaintiff's condition could reasonably be expected to produce the pain or other symptoms alleged. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). Here, the ALJ found that Plaintiff had the severe impairments of right leg foot drop and right leg with atrophy. AR 14. The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that Plaintiff's statements concerning "the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." AR 16. This finding satisfied step one of the credibility analysis. *Smolen*, 80 F.3d at 1281-82.

To reject a claimant's symptom testimony—absent affirmative evidence of malingering, and assuming his impairments could reasonably give rise to his reported symptoms—the ALJ must make specific credibility findings supported by clear and convincing reasons. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); *Schow v. Astrue*, 272 F. App'x 647, 654 (9th Cir. 2008). An ALJ may engage in ordinary techniques of assessing credibility. *Burch,* 400 F.3d at 680.

The ALJ provided several clear and convincing reasons for concluding Plaintiff's testimony was not fully credible. *Bray v. Commissioner,* 554 F.3d 1219, 1227 (9th Cir. 2009) ("In reaching a credibility determination, an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors."). First, the ALJ noted that Plaintiff gave inconsistent testimony when explaining why she stopped working at the warehouse. AR 16. In both her testimony and the disability report Plaintiff admitted that she stopped working at the warehouse because the company closed and relocated overseas. AR 33, 182. However, later Plaintiff stated that she could no longer continue to work because of her physical impairments. AR 33. The ALJ was correct to note the inconsistencies in Plaintiff's answers to the fundamental question of whether Plaintiff could work despite her impairments. Plaintiff's inconsistencies continued in her pain questionnaire and disability report where Plaintiff alleged that after she was injured in 2006 she

experienced constant pain daily, however Plaintiff continued performing physically intensive work as a freight loader at the warehouse until January of 2009. AR 32, 182, 198. From 2006 to 2009, Plaintiff lifted freight that weighed anywhere from 75 to 100 pounds, yet Plaintiff testified that during those three years she experienced pain when lifting anything over ten pounds. The ALJ properly rejected Plaintiff's pain testimony based on these contradicting statements.

Second, the ALJ stated that Plaintiff's pain allegations are greater than expected in light of the objective medical evidence in the record. AR 17. Plaintiff testified that neither her physical therapy treatment nor her back surgery helped her pain. AR 37-38. However, in September of 2007, treating physical therapist, Brian Nitta, noted that Plaintiff was doing better with treatment and that she was feeling okay. AR 16, 248-252. The ALJ also observed that aside from her orthopedic consultation in 2011, Plaintiff did not seek any medical treatment from 2008 to May of 2012. AR 16, 254. Thus, despite claiming that she received no relief from her treatment, Plaintiff sought no additional treatment for her pain.  The ALJ was proper in analyzing this discrepancy. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (finding lack of consistent treatment "powerful evidence" that Plaintiff was not credible with regard to his claims of severe pain, depression, and fatigue).   Further, the record contained evidence of Plaintiff's improvement.   While being seen in July of 2012 for a follow up concerning her complaints about fatigue and pain, the record indicates the iron pills had improved Plaintiff's anemia and fatigue.  AR 16, 265. Plaintiff also had back pain relief with her prescriptions for Gabapentin and Vicodin. AR 16, 265. The ALJ also noted that later that month Plaintiff was being treated "conservatively" for her anemia and she had an overall normal physical examination. AR 17, 262.  *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment.") (internal quotations omitted.); s*ee also Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989) (finding that the claimant's allegations of persistent, severe pain and discomfort were belied by "minimal conservative treatment").

The ALJ also noted inconsistencies between Plaintiff's reported daily activities and her contention of total disability.  AR 16. An ALJ may consider inconsistencies between a claimant's

activities and his subjective complaints. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). In her pain questionnaire, Plaintiff stated that she suffers from constant shooting pain on a daily basis and can only walk five to six steps at a time, sit for five to ten minutes at a time, and stand for five to ten minutes at a time. AR 198. However, in subsequent reports Plaintiff admits that she cares for her own personal needs and she occasionally drives. AR 200, 215, 226. The ALJ noted that these activities were inconsistent with a person who can only take five to six steps at a time. The ALJ appropriately considered Plaintiff's admitted activities of daily living, which included moderate daily care which was inconsistent with Plaintiff's claims of inability to perform even simple, repetitive work.

Here, the ALJ clearly identified what testimony he found not credible and what evidence undermined Plaintiff's complaints. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (as amended). Therefore, contrary to Plaintiff's assertions, as detailed above the ALJ provided clear and convincing reasons that are supported by substantial evidence when concluding Plaintiff's subjective symptom testimony was not fully credible. Where the ALJ's finding is supported by substantial evidence, the Court "may not engage in second-guessing." *Thomas,* 278 F.3d at 959. Accordingly, the ALJ's credibility findings are free of legal error.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Carolyn W. Colvin, Commissioner of Social Security, and against Plaintiff, Christine Harris.


IT IS SO ORDERED.

Dated:   **March 2, 2015**                    /s/ *Barbara A. McAuliffe*
                                              UNITED STATES MAGISTRATE JUDGE

13